54 CCPA

**STEINBERG BROTHERS, INC.,**
Appellant,

v.

**NEW ENGLAND OVERALL CO., Inc.,**
Appellee.

**Patent Appeal No. 7798.**

United States Court of Customs
and Patent Appeals.
May 25, 1967.

Kirkpatrick, J., dissented.

Kaye, Scholer, Fierman, Hays & Handler, New York City (Sidney A. Diamond, New York City, of counsel), for appellant.

Stanley Sacks, Boston, Mass., for appellee.

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board dismissing appellant's opposition to appellee's application [1] to register NU-HIDE for "dungarees."

Appellant is engaged in the tanning of animal hides into leather, and the sale of such leather, which is used, inter alia, in making cowboys' chaps, which are leather leggings resembling trousers without a seat and worn over regular pants as a leg protection. Appellee's dungarees on the other hand, are not made of, nor do they contain leather.

Appellant contends that NUHIDE is the phonetic equivalent of either "new hide" or "gnu hide," a gnu being a type of antelope, and that, as applied to dungarees, the mark sought to be registered by appellee is deceptive and/or deceptively misdescriptive of the goods under sections 2(a) and 2(e) (1) of the Trademark Act of 1946, 15 U.S.C. § 1052(a), (e) (1), since the term NUHIDE would indicate to purchasers thereof that the goods contain, or are made of, leather or hide, whereas such is not in fact the case. In support of these contentions appellant cites the decisions of this court in R. Neumann & Co. v. Bon-Ton Auto Upholstery, Inc., 326 F.2d 799, 51 CCPA 934 (1964) and R. Neumann & Co. v. Overseas Shipments, Inc., 326 F.2d 786, 51 CCPA 946 (1964).[2]

The former case involved the term VYNAHYDE for non-leather plastic film which could be made to simulate leather, and for plastic film made into furniture slip covers used to cover various types of upholstery, including leather. The latter case involved the term DURA-HYDE for plastic material of leatherlike appearance made into shoes, the uppers thereof being made to simulate both the grain appearance and the color of tanned leather. With regard to these and other precedents relied upon by appellant-opposer, we think the board correctly and appropriately stated that:

In each of the cases relied upon by opposer, however, the goods in question were either leather substitutes or products made of leather substitutes, whereas such is not the case with respect to the goods of the instant applicant; and none of the cited cases otherwise stand for the proposition advanced by opposer, i. e. the use of leather terms for any and all non-leather products is per se deceptive and deceptively misdescriptive.

We likewise agree with the following analysis by the board of the particular facts and circumstances of the case at bar:

It thus appears, and it is a matter of common knowledge, that dungarees are a particular type of garment made exclusively from a particular type of cotton fabric, as it likewise is that chaps are a distinctly different type of garment made exclusively of leather. Under these circumstances, it is our opinion that the purchasing public is not at all likely to be deceived, misled or induced by applicant's use of

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 164,988, filed March 19, 1963.

2. These two *Neumann* cases are also heavily relied upon by the appellant in a com-

panion case heard and decided concurrently herewith. W. D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co., 377 F.2d 1001, 54 CCPA ——.

"NUHIDE" into buying applicant's dungarees in the mistaken belief that they are made in whole or in part of leather or into buying applicant's dungarees in the mistaken belief that they are chaps.

Appellant's arguments are largely based on the fact that dungarees, e. g. bluejeans, are one type of work pants, a class of goods which might also include cowboys' chaps. Therefore, according to appellant, the goods of the parties are competing. This argument seems to ignore the fact that chaps, which have no seat, would only be worn in conjunction with regular work pants, such as dungarees. Thus the parties' goods are not competing. Also, the description of goods in appellee's application is limited to "dungarees," not work pants broadly, and the specimen label for the goods describes them as *"A COMPLETELY WASHABLE* Western Dungaree."* While the label also apparently misdescribes the dungarees as "CHAPS," as noted by the board, we do not consider this to be *deceptively* misdescriptive under the circumstances of this case, especially since seatless chaps may be worn in conjunction with, but not as a substitute for, dungarees.

Having found no reversible error in the decision of the board dismissing appellant's opposition, we affirm that decision.

Affirmed.

WORLEY, C. J., did not participate.

KIRKPATRICK, Judge (dissenting).

As noted by the majority, this court in R. Neumann & Co. v. Bon-Ton Auto Upholstery, Inc., 326 F.2d 799, 51 CCPA 934, held that "VYNAHYDE" was both deceptive and deceptively misdescriptive of plastic films and plastic films made into furniture slipcovers, because it gave the erroneous impression that they were made of leather. In the present case the majority holds that "NUHIDE" is not deceptive or deceptively misdescriptive when applied to a type of pants known as dungarees. The fact that

dungarees are made from a certain type of cloth does not in my view prevent a purchaser from assuming that the same style of pants is made from a different material, the word "dungarees" being regarded as a style designation. Under these circumstances I think that the word "NUHIDE" would convey to the prospective purchaser that he would be obtaining a pair of leather pants styled as blue jeans or dungarees are now styled. It seems to me that the majority's reasoning might lead to a conclusion that a trademark such as "LEATHER DUNGAREES" would not be deceptive or deceptively misdescriptive, presumably because no one ought to believe the statement. It is also of some significance that the specimen label misdescribes the goods in question as chaps which are normally made of leather.

I would, therefore, reverse the decision of the board.